IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:09-CV-5-D

| | | |
|---|---|---|
| AMANDA GAIL HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ROBESON COUNTY, | ) | |
| NORTH CAROLINA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Amanda Gail Hill ("Hill" or "plaintiff") alleges that beginning in September 2007 and continuing until sometime in October 2007, Robeson County Offender Resource Center Officer Hollis Britt and Robeson County Sheriff's Department Deputies Marty Hunt, Ed Jacobs, and Eugene Seals ("the officers") sexually abused Hill. When the alleged abuse occurred, Hill was 21 years old and on pretrial supervision in Robeson County awaiting trial on an armed robbery charge. Hill filed suit under 42 U.S.C. § 1983 against the officers and many others alleging various violations of her constitutional rights. Several of those defendants — Robeson County, Kenneth N. Windley, Jr., Samuel Kerns, Noah Woods, Tom Taylor, Raymond Cummings, Jr., Hubert Sealey, Tommy Wellington, Jerry Stephens, and Roger Oxendine (collectively, the "moving defendants") — now move to dismiss plaintiff's amended complaint against them and move to strike several paragraphs of Hill's amended complaint. In addition, the Robeson County Sheriff's Office has filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. As explained below, the court grants the moving defendants' motion to dismiss for failure to state a claim, denies the moving defendants' motion to strike, and grants the Robeson County Sheriff's Office's motion to dismiss for failure to state a claim.

I.

Plaintiff (through counsel) has stated the facts in a rambling and redundant 139-page amended complaint. Plaintiff's amended complaint contains a section entitled "Factual Allegations" (Am. Compl. ¶¶ 157–268), and six sections labeled as causes of action. See id. ¶¶ 269–411. The court recites the essential facts alleged in the amended complaint in the light most favorable to plaintiff.

In September 2007, Hill was a 21-year-old woman living in Robeson County, North Carolina, and was on pretrial supervision awaiting trial for armed robbery. See id. ¶¶ 1, 189–93. Robeson County operates Robeson County Offender Resource Center ("RCORC") "as a Robeson County government agency." Id. ¶ 4. RCORC Pretrial Release Officer Hollis Britt ("Britt") was Hill's supervisor while she was on pretrial supervision. Id. ¶¶ 189–93. As a pretrial release officer, Britt was supposed to monitor Hill for drug use. See id. According to Hill, beginning in September 2007 and continuing until sometime in October 2007, Britt and Robeson County Sheriff's Department Deputies Marty Hunt, Ed Jacobs, and Eugene Seals, "sexually abused" her. See id. ¶¶ 1, 140, 167, 188, 189–193. Among other things, Hill alleges that the officers knew Hill was addicted to drugs and engaged in a "civil conspiracy" in order "to effectuate and to carry out an illicit, predatory and exploitative sexual scheme against [p]laintiff." Id. ¶ 194. As part of the scheme, the officers allegedly provided Hill with money and drugs. Id. ¶ 195. The alleged sexual acts took place primarily at Hill's home in Lumberton, North Carolina. See id. ¶¶ 202–03, 221. During these various encounters with Hill, the officers also discussed Hill's pending criminal charges outside the presence of Hill's attorney. See id. ¶ 274. The conduct continued until sometime in October 2007 when Hill informed Officer Burniss Wilkins from the Lumberton Police Department of the officers'

actions. See id. ¶¶ 208, 215, 235. Thereafter, Wilkins contacted the SBI, and electronic surveillance confirmed the officers' conduct. See id. ¶ 235.

Hill seeks relief under 42 U.S.C. § 1983 and asserts that the officers violated her rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. See id. ¶¶ 271–74. Specifically, Hill asserts that the officers violated her Fourth Amendment right against unreasonable searches and seizures, violated her Fifth Amendment right to a fair trial, violated her Sixth Amendment right to counsel, and denied her due process of law under the Fourteenth Amendment. See id.

Hill seeks damages from eighteen defendants: (1) Robeson County, North Carolina; (2) Kenneth N. Windley, Jr., in his official capacity as Robeson County Manager; (3) Noah Woods in his official capacity as a Robeson County Commissioner; (4) Tom Taylor in his official capacity as a Robeson County Commissioner; (5) Raymond Cummings, Jr., in his official capacity as a Robeson County Commissioner; (6) Hubert Sealey in his official capacity as a Robeson County Commissioner; (7) Tommy Wellington in his official capacity as a Robeson County Commissioner; (8) Jerry Stephens in his official capacity as a Robeson County Commissioner; (9) Roger Oxendine in his official capacity as a Robeson County Commissioner; (10) Robeson County Sheriff's Office; (11) Kenneth Sealey in his official capacity as Robeson County Sheriff; (12) Western Surety Company, the surety carrier for Sheriff Kenneth Sealey; (13) Eugene Seals in his individual capacity and official capacity as a former Robeson County Sheriff's Deputy; (14) Marty Hunt in his individual capacity and official capacity as a former Robeson County Sheriff's Deputy; (15) Ed "Boots" Jacobs in his individual capacity and official capacity as a former Robeson County Sheriff's Deputy; (16) Samuel Kerns in his official capacity as Director of the RCORC; (17) Hollis Britt in his individual

3

capacity and official capacity as a former Pretrial Release Officer at the RCORC; and (18) Luther Johnson Britt, in his official capacity as a member of the RCORC's Board of Directors [D.E. 1, 64].

On April 14, 2009, Hill filed a motion for leave to file an amended complaint [D.E. 40]. On October 20, 2009, the court denied Hill's motion to amend as unnecessary and deemed the amended complaint filed effective that same day [D.E. 52]. Hill's amended complaint added the Robeson County Sheriff's Office ("RCSO") and Western Surety Company as defendants. In her amended complaint, Hill also clarified that she was suing defendants Robeson County, Windley, Kerns, Luther Johnson Britt, Woods, Taylor, Sealey, Wellington, Stephens, and Oxendine only in relation to the actions of Hollis Britt. See Mem. Supp. Mot. to Amend 2–3. To do so, Hill added captions in her six causes of action explaining which parties were being named in each cause of action. See Am. Compl. 91–92, 114, 118, 130, 133, 135.[1]

In count one, Hill seeks relief under section 1983 for violations of her Fourth, Fifth, Sixth, and Fourteenth Amendment rights against Sheriff Seals, Eugene Seals, Marty Hunt, Ed Jacobs, and the Robeson County Sheriff's Office. See id. ¶¶ 269–340. In count two, Hill seeks relief under section 1983 for violations of her Fourth, Fifth, Sixth, and Fourteenth Amendment rights against Sheriff Seals, Eugene Seals, Marty Hunt, and Ed Jacobs. See id. ¶¶ 341–51. In count three, Hill seeks relief under section 1983 for violations of her Fourth, Fifth, Sixth, and Fourteenth Amendment rights against the Robeson County Commissioners, Robeson County Manager Windley, RCORC Board Member Luther Johnson Britt, Hollis Britt, and Samuel Kerns. See id. ¶¶ 352–92. In count four, Hill seeks relief under section 1983 for violations of her Fourth, Fifth, Sixth, and Fourteenth Amendment rights against the Robeson County Commissioners, Robeson County Manager Windley,

---

[1]Hill did not number the captions in her six causes of action as paragraphs; therefore, the court cites the page numbers on which the captions appear.

4

RCORC Board Member Luther Johnson Britt, Hollis Britt, and Samuel Kerns. See id. ¶¶ 393–402. In count five, Hill seeks relief under section 1983 for violations of her Fourth, Fifth, Sixth, and Fourteenth Amendment rights against Hollis Britt, Marty Hunt, Ed Jacobs, and Eugene Seals. See id. ¶¶ 403–05. In count six, Hill seeks relief under section 1983 for violations of her Fourth, Fifth, Sixth, and Fourteenth Amendment rights against Robeson County, Samuel Kerns, the Robeson County Commissioners, Robeson County Manager Windley, and RCORC Board Member Luther Johnson Britt. See id. ¶¶ 406–11.

On November 3, 2009, defendants Robeson County, Robeson County Manager Kenneth N. Windley, Jr., Director of the RCORC Samuel Kerns, and Robeson County Commissioners Noah Woods, Tom Taylor, Raymond Cummings, Jr., Hubert Sealey, Tommy Wellington, Jerry Stephens, and Roger Oxendine filed a motion to dismiss counts three, four, and six and a motion to strike portions of the amended complaint [D.E. 53]. On November 23, 2009, plaintiff responded in opposition [D.E. 61].

On March 26, 2010, defendant Robeson County Sheriff's Office filed a motion to dismiss count one for failure to state a claim and for lack of personal jurisdiction [D.E. 98]. On April 18, 2010, Hill responded in opposition [D.E. 108].

II.

A.

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007);

5

Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions, elements of a cause of action, or bare assertions devoid of further factual enhancement. See Ashcroft, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Ashcroft, 129 S. Ct. at 1949–50. A defendant is entitled to have a claim dismissed if the plaintiff fails to allege enough facts "to raise a right to relief above the speculative level" by providing "enough facts to state a claim to relief that is plausible on its face." Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009) (quotations omitted).

B.

Initially, the moving defendants argue that the court should dismiss the claims in counts three, four, and six against Windley, Woods, Taylor, Cummings, Sealey, Wellington, Stephens, Oxendine, and Kerns (collectively "county officials") because they have been sued only in their official capacities and such claims duplicate plaintiff's claims against Robeson County. See Defs.' Mem. Supp. 9–11. Plaintiff agrees. See Pl.'s Mem. Opp'n 5.

A claim against a government employee in his official capacity is tantamount to a claim against the government entity for which he works and should be dismissed as duplicative. See, e.g., Kentucky v. Graham, 473 U.S. 159, 165–66 (1985); Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004). Because Hill sued the county officials only in their official capacities in counts three, four, and six, Hill's claims against Windley, Woods, Taylor, Cummings, Sealey, Wellington, Stephens, Oxendine, and Kearns are dismissed.

6

C.

In counts three, four, and six, Hill seeks to impose municipal liability on Robeson County based on inadequate hiring, training, supervision, and discipline of Britt. See Am. Compl. ¶¶ 352–402, 406–11. A municipality is not liable under section 1983 for the actions of its employees or agents unless the plaintiff can show that a municipal policy or custom caused plaintiff's constitutional injury. See, e.g., Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403–04 (1997); Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978). In order to impose municipal liability, the municipality's employee must (at a minimum) have committed a constitutional violation. See, e.g., Monell, 436 U.S. at 694.[2]

In this case, Hill has alleged that Britt (1) sexually abused her in violation of the Due Process Clause of the Fourteenth Amendment, (2) spoke with her about her pending case outside the presence of an attorney in violation of the Sixth Amendment, and (3) unlawfully searched her and her home without a warrant in violation of the Fourth Amendment. See Am. Compl. ¶¶ 194–227, 274. Accordingly, Hill has alleged sufficient facts that Britt violated her constitutional rights to state a claim for relief plausible on its face. Cf., e.g., Illinois v. McArthur, 531 U.S. 326, 330–31 (2001)

---

[2]Not all evidence of constitutional violations may be considered in a municipal-liability claim. For example, "a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury or that it was the moving force behind her deprivation." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999). To the extent that Hill asks the court to consider the criminal conduct in the Robeson County Sheriff's Office uncovered during "Operation Tarnished Badge" for purposes of establishing a municipal policy or custom of criminal or constitutional violations, Operation Tarnished Badge did not involve the types of violations alleged in this case. See Am. Compl. ¶¶ 157–69; cf. Webb v. N.C. Dep't of Crime Control & Pub. Safety, 658 F. Supp. 2d 700, 705 & n.1 (E.D.N.C. 2009) (describing Operation Tarnished Badge and detailing the individuals within the Robeson County Sheriff's Office convicted of various crimes as part of Operation Tarnished Badge). Therefore, plaintiff's allegations regarding Operation Tarnished Badge do not suffice to state a municipal-liability claim against Robeson County. See Carter, 164 F.3d at 218.

7

(discussing the Fourth Amendment's warrant requirement and its various exceptions); United States v. Cain, 524 F.3d 477, 482 (4th Cir. 2008) (holding that the Sixth Amendment generally permits interrogation of a represented person only "(1) if it was the defendant, and not the Government, who initiated the interrogation; and (2) if the defendant voluntarily waived his right to counsel"); Jones v. Wellham, 104 F.3d 620, 628 (4th Cir. 1997) (holding that forcible rape of a suspect by a police officer may constitute a "violation of the substantive due process right under the Fourteenth Amendment not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm").[3]

Alleging that a municipal employee (such as Britt) committed a constitutional violation is necessary in order to state a claim against a municipality, but is not sufficient. "[A] municipality is only liable under section 1983 if it causes [a constitutional] deprivation through an official policy or custom." Carter, 164 F.3d at 218; see, e.g., Brown, 520 U.S. at 403–04. This requirement limits municipal liability under section 1983 to those actions for which the municipality is actually responsible by distinguishing between acts attributable to the municipality and acts attributable only to municipal employees. See, e.g., Brown, 520 U.S. at 403–04; Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000). Therefore, a municipality may not be found liable under section 1983 based on a theory of respondeat superior or simply for employing a tortfeasor. See, e.g., Brown, 520 U.S. at 403.

Of course, not every municipal official's decision or action represents municipal policy. Rather, the inquiry focuses on whether the municipal official possessed final policymaking authority with respect to the action ordered. See, e.g., Pembaur v. City of Cincinnati, 475 U.S. 469, 481

---

[3] At this time, the court need not address the viability of Hill's Fifth Amendment claim.

(1986); Riddick, 238 F.3d at 523. Hill alleges that Robeson County's final policymaking officials made the decisions relating to Britt's hiring, training, supervision, and discipline. See Am Compl. ¶ 374. Robeson County has not contested this assertion for purposes of its motion to dismiss. Accordingly, the court assumes that Hill has alleged the decisionmakers possessed final authority to establish municipal policy with respect to the action ordered.

Even if a plaintiff can identify the requisite final authority, a municipality is not liable simply because a plaintiff "is able to identify conduct attributable to the municipality." Riddick, 238 F.3d at 524. Rather, "[t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Brown, 520 U.S. at 404; see, e.g., City of Canton v. Harris, 489 U.S. 378, 389 (1989) ("Municipal liability under [section] 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives." (quotation and alteration omitted)). Thus, in order to avoid imposing respondeat superior liability on municipalities, a plaintiff must do more than identify something that the municipality "could have done" to prevent the alleged injury. See Harris, 489 U.S. at 392; City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985) (plurality opinion). Specifically, to impose section 1983 liability on a municipality, a plaintiff must show that "a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Brown, 520 U.S. at 411; see Harris, 489 U.S. at 392; Carter, 164 F.3d at 218.

"Deliberate indifference is a very high standard — a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." Brown, 520 U.S. at 410. Moreover, even if a section 1983 plaintiff can demonstrate the requisite degree of

9

culpability, she also must show "a direct causal link between the municipal action [or inaction] and the deprivation of federal rights." Id. at 404. Deliberate indifference and causation, although often intertwined and analyzed concurrently, are separate requirements. See id.

Because the parties address plaintiff's section 1983 municipal-liability claims in counts three, four, and six separately, the court does as well. See Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 31–32 (1st Cir. 2005). First, Hill attacks Robeson County's decision to hire Britt. In her hiring claim, Hill argues that Robeson County was deliberately indifferent to the risk that Britt would sexually abuse her. See Am. Compl. ¶ 374. In support, Hill alleges that Britt was convicted of manslaughter in 1981 after killing his wife in 1979 and Britt served approximately five years in prison. See id. ¶ 123. When Britt killed his wife, Britt was a North Carolina highway patrol officer. See id. According to Hill, Robeson County knew or should have known that the "plainly obvious consequence" of hiring Britt in March 2006 as a pretrial release officer with authority over drug-addicted women, is that he would commit violent acts against women, including Hill. See id. ¶¶ 124–29, 374.

In Brown, the Supreme Court examined the showing required to hold a municipality liable for a single deficient hiring decision. The Court observed that basing municipal liability on an allegedly deficient hiring decision poses the "greatest risk that a municipality will be held liable for an injury that it did not cause." Brown, 520 U.S. at 415. In order to avoid collapsing section 1983 municipality liability into respondeat superior liability, the Court adopted stringent culpability and causation requirements, requiring more than a showing "of simple or even heightened negligence." Id. at 407, 415; see Morris v. Crawford County, 299 F.3d 919, 922 (8th Cir. 2002).

Where a plaintiff alleges that a deficient hiring decision creates municipal liability, the deliberate-indifference standard requires plaintiff to show that the applicant's background "would

10

lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right[s]." Brown, 520 U.S. at 411. In other words, municipal liability depends on a finding that the person hired "was highly likely to inflict the particular injury suffered by the plaintiff." Id at 412. Furthermore, "[t]he connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." Id.; see Young, 404 F.3d at 30 ("This standard is exceptionally stringent."); Gros v. City of Grand Priarie, 209 F.3d 431, 435 (5th Cir. 2000) (recognizing that a "strong causal connection" is required (quotation omitted)); Barney v. Pulsipher, 143 F.3d 1299, 1308 (10th Cir. 1998) ("[C]ourts must . . . carefully test the link between the policymaker's hiring decision and the particular injury alleged." (quotation and citations omitted)); see also Riddick, 238 F.3d at 526. This strong causal connection exists only where the acts in the defendant's background and the alleged constitutional violations are "nearly identical." Morris, 299 F.3d at 923; see Brown, 520 U.S. at 411–12; Young, 404 F.3d at 30–31; Riddick, 238 F.3d at 526.

Brown illustrates whether the requisite strong connection is present. In Brown, Deputy Burns broke Brown's knee caps while forcibly removing Brown from her car to arrest her. Brown thereafter sued under section 1983 and the Fourth Amendment and alleged that the sheriff's deficient hiring decision concerning Burns caused the excessive use of force. According to the complaint, when the sheriff hired Burns, Burns had a record of driving infractions and misdemeanor convictions for public drunkenness, assault, battery, and resisting arrest. Brown, 520 U.S. at 401. The Court held that it was not enough that Burns may have been an "extremely poor candidate" for his job as a deputy sheriff and declined to impose municipal liability because Burns' background did not reveal that it would be "highly likely" that he would "inflict the particular injury suffered by the plaintiff." Id. at 412–15 (emphasis omitted).

11

Similarly, in this case, the amended complaint does not contain the requisite strong connection. Robeson County's decision to hire Britt in March 2006 as an Offender Center Resource Officer was itself legal, and Robeson County did not authorize Britt to sexually abuse Hill or otherwise violate her constitutional rights. Although Britt was convicted in 1981 of manslaughter for killing his wife and served approximately five years in prison, Hill has not alleged that Britt engaged in any other unlawful or violent conduct during the two decades between Britt's release from prison and Robeson County's hiring of him in March 2006.[4] Furthermore, Hill acknowledges that Robeson County hired Britt, because, inter alia, Robeson County believed that Britt had reformed and "could identify with the people he was trying to help." Am. Compl. 63 n.21. Accordingly, the amended complaint lacks the strong causal connection between Britt's 1981 manslaughter conviction and Britt's alleged constitutional violations in 2007. See, e.g., Brown, 520 U.S. at 411–12; Young, 404 F.3d at 30–31 ("[E]ven when an applicant's background contains complaints of physical violence, including acts of aggression and assault, this may still be insufficient to make a [municipality] liable for inadequate screening of an officer who then uses excessive force." (quotation omitted)).

In opposition to this conclusion, Hill argues that Brown requires a strong causal connection only when the acts in the defendant's background are less serious than the alleged constitutional

---

[4]Hill contends that pretrial discovery would allow her to determine whether Britt engaged in any misconduct between 1985 and 2006. See Pl.'s Mem. Opp'n 11. She also contends that pretrial discovery would allow her to discover why Britt served only approximately five years of a twenty-year sentence, whether Robeson County had anything to do with Britt's release in 1985, and whether Britt's release from custody in 1985 combined with Robeson County's hiring of him in 2006 so "emboldened" Britt that he was more likely to commit sexual assault. See id. at 19.

Mere assertions that some evidence may exist to support a claim do not unlock the doors of discovery. See, e.g., Ashcroft, 129 S. Ct. at 1950. Accordingly, the court rejects plaintiff's contention that possible evidence of further misconduct warrants denying the motion to dismiss. See id.; Nemet Chevrolet, 591 F.3d at 255.

12

violations. See Pl.'s Mem. Opp'n 9–11, 13–22. Stated differently, Hill contends that because Britt killed his wife in 1979 and was convicted of manslaughter in 1981, Robeson County necessarily should have foreseen the alleged sexual abuse in 2007.

The court rejects Hill's creative interpretation of Brown. Nothing in Brown or its progeny creates Hill's proposed per se rule of foreseeability. Rather, Brown and its progeny demonstrate that the alleged constitutional violations and the municipal official's prior conduct must be nearly identical in order to support municipal liability based on a claim of inadequate hiring. See, e.g., Brown, 520 U.S. at 412; Young, 404 F.3d at 30; Gros, 209 F.3d at 435; Barney, 143 F.3d at 1308; see also Riddick, 238 F.3d at 526. Because the amended complaint lacks the requisite strong showing, the court grants the motion to dismiss Hill's hiring claim against Robeson County in counts three, four, and six.

Hill also seeks to impose municipal liability against Robeson County based on inadequate training. Specifically, she alleges that Robeson County "agreed to, approved, and ratified" Britt's unconstitutional conduct by failing to "train and to retrain Hollis Britt." See, e.g., Am. Compl. ¶ 378. Essentially, Hill's inadequate training claim alleges that Robeson County failed to train Britt to not sexually abuse women under his supervision. See id. ¶¶ 120–38.

A municipality's failure to train its officials can result in liability under section 1983 only when such failure reflects a "deliberate indifference" to the rights of its citizens and "the identified deficiency in a city's training program [is] closely related to the ultimate injury." Harris, 489 U.S. at 388, 391. Additionally, a plaintiff must show a "direct causal link" between "a specific deficiency in training and the particular violation alleged." Buffington v. Baltimore County, 913 F.2d 113, 122 (4th Cir. 1990). It will not "suffice to prove that an injury . . . could have been

13

avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" because "[s]uch a claim could be made about almost any encounter." Harris, 489 U.S. at 391. Instead, a plaintiff must demonstrate specific training deficiencies and either (1) that inadequately trained employees engaged in a pattern of unconstitutional conduct, or (2) that a violation of a federal right is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Brown, 520 U.S. at 407–09; see, e.g., Harris, 489 U.S. at 390–91; id. at 396–97 (O'Connor, J., concurring in part and dissenting in part); Cornfield v. Consol. High Sch. Dist. No. 230, 991 F.2d 1316, 1327 (7th Cir. 1993). In the second situation, the Harris Court explained that the need for "more or different training" must be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Harris, 489 U.S. at 390. For example,

> city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

Id. at 390 n.10 (citation omitted).

The Fourth Circuit has not analyzed what constitutes a recurring situation under Brown and Harris; however, several circuit courts have. In Andrews v. Fowler, 98 F.3d 1069 (8th Cir. 1996), the chief of police warned a law enforcement officer not to fraternize with minor females while on duty after the chief of police observed the officer taking a particular interest in the plaintiff. Id. at 1073. Later that same night, the officer raped the plaintiff. Id. In refusing to impose municipal liability for inadequate training, the Eighth Circuit held that there was no "patently obvious need for

14

the city to specifically train officers not to rape young women" even in the face of notice that an officer had a tendency to fraternize with young women. Id. at 1077. In West v. Waymire, 114 F.3d 646 (7th Cir. 1997), the plaintiff sought to impose municipal liability on the Town of Frankton because one of its police officers molested a 13-year-old girl. In rejecting municipal liability, the Seventh Circuit explained that "[i]t seems doubtful that the fact that police officers sometimes encounter teenage girls in the line of duty obligates a police department to take measures to prevent its officers from molesting these girls, on the theory that such molestation is so likely that it should be deemed foreseeable." Id. at 650. In Barney v. Pulsipher, 143 F.3d 1299 (10th Cir. 1998), jail officials sexually assaulted inmates. In rejecting municipal liability, the Tenth Circuit held that even if the training provided to jail officials was inadequate "the sexual assault of inmates" was not "a plainly obvious consequence of a deficient training program." Id. at 1308 ("Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior."); accord Parrish v. Ball, 594 F.3d 993, 999 (8th Cir. 2010) (holding that there is not an "obvious need to train officers not to sexually assault women").

As for Hill's claim that Robeson County failed to train Britt not to sexually abuse her, she has failed to allege any pattern of similar constitutional violations. See, e.g., Brown, 520 U.S. at 407–08; Carter, 164 F.3d at 218. Moreover, this case is not the type of case where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of [Robeson County] can reasonably be said to have been deliberately indifferent to the need." Harris, 489 U.S. at 390; see Parrish, 594 F.3d at 999; Barney, 143 F.3d at 1308; Waymire, 114 F.3d at 650; Andrews, 98 F.3d at 1077. Thus, the court grants Robeson County's motion to dismiss Hill's training claim in counts three, four, and six.

15

Next, Hill alleges that Robeson County's failure to discipline Britt following the alleged constitutional violations constitutes deliberate indifference to the risk that those violations would occur. See Am. Compl. ¶ 374. However, Robeson County terminated Britt's employment after he was convicted in January 2009 of attempted sexual activity by a custodian. See id. ¶ 179; cf. id. ¶ 178 n.20; North Carolina Department of Correction Offender Public Info, Offender Search, http://webapps6.doc.state.nc.us/opi/offendersearch.do?method=view (last visited May 20, 2010). Because Robeson County did discipline Britt after the alleged constitutional violations, the premise of Hill's claim fails. Cf., e.g., Brown, 520 U.S. at 404; Harris, 489 U.S. at 391. Moreover, Hill does not allege that Britt continued to supervise her or engage in any further sexual abuse once she reported Britt's alleged conduct to Officer Wilkins in October 2007. Cf. Am. Compl. ¶¶ 178–86, 215. Thus, Hill cannot prove that the alleged failure-to-discipline caused any injury to her. Accordingly, the court grants Robeson County's motion to dismiss Hill's failure-to-discipline claim.

### D.

Next, Hill also alleges a supervisory-liability claim against Robeson County. See, e.g., Am Compl. ¶ 374. Robeson County responds that plaintiff has not alleged that any policymaking supervisory official had knowledge of Britt's unconstitutional conduct in this case or of similar and widespread criminal abuse. See Defs.' Mem. Supp. 20–21.

Liability for inadequate supervision is not premised upon respondeat superior but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). To establish supervisory liability under section 1983, a plaintiff must show:

16

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (quotations omitted). Under Shaw, the subordinate's conduct must be "pervasive," meaning that the "conduct is widespread, or at least has been used on several different occasions." Id. In order to show deliberate indifference, a plaintiff must demonstrate a supervisor's "'continued inaction in the face of documented widespread abuses.'" Id. (quoting Slakan, 737 F.2d at 373). Furthermore, "a supervisor cannot be expected . . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." Slakan, 737 F.2d at 373; see Randall v. Prince George's County, 302 F.3d 188, 206 (4th Cir. 2002).

Here, Hill alleges that Robeson County was aware of widespread criminal conduct within the Robeson County Sheriff's Office due to Operation Tarnished Badge and that Robeson County knew of Britt's 1981 manslaughter conviction. However, Hill does not allege that Robeson County was aware of the alleged underlying misconduct in this case or of similar widespread misconduct. Moreover, as mentioned, Operation Tarnished Badge did not involve allegations of sexual abuse within the Robeson County Sheriff's Office. See Webb, 658 F. Supp. 2d at 705. Furthermore, Shaw's knowledge requirement is not satisfied by generalized allegations of widespread criminality. See, e.g., Randall, 302 F.3d at 207; Carter, 164 F.3d at 220–21. Otherwise, a court would not be ensuring "that the failure to supervise contributed to the constitutional deprivation in question." Randall, 302 F.3d at 207; see Slakan, 737 F.2d at 372. Additionally, Britt's 1981 manslaughter

17

conviction does not establish the requisite actual or constructive knowledge. Cf., e.g., Brown, 520 U.S. at 412; Young, 404 F.3d at 30; Riddick, 238 F.3d at 525–26; Gros, 209 F.3d at 435; Barney, 143 F.3d at 1307–08. Accordingly, Hill has failed to allege sufficient facts to state a plausible supervisory-liability claim, and the court grants Robeson County's motion to dismiss Hill's supervisory-liability claim in counts three, four, and six.

E.

Finally, Robeson County moves to dismiss Hill's generalized claim that Robeson County created a "custom, policy, or practice of allowing corruption and criminality at the RCORC." Defs.' Mem. Supp. 22 (quotation omitted). Hill, however, has not raised this as a separate claim. Rather, Hill alleges that Robeson County's "policy and custom of corruption and criminality" was created by inadequately hiring, training, supervising, and disciplining Britt. See Am. Compl. ¶ 374. Thus, in context, Hill's policy-and-custom claim states a broad theory of municipal liability or supervisory liability. In any event, to the extent that Hill's amended complaint contains a separate claim that Robeson County created a "policy and custom of allowing corruption and criminality at RCORC," the claim fails for the reasons already discussed.

III.

The moving defendants move to strike portions of plaintiff's amended complaint [D.E. 53]. First, the county officials ask the court strike the claims against them in their official capacities as duplicative of the claims against Robeson County. However, because the court has dismissed the claims against the county officials in their official capacities, the moving defendants' motion to strike these claims is denied as moot.

Next, the moving defendants move to strike paragraphs 295–307, 349, and 405 of plaintiff's amended complaint as immaterial pursuant to Federal Rule of Civil Procedure 12(f). Hill responds

that it is unnecessary to strike paragraphs 295–307, 349, and 405 because those paragraphs are in counts one, two, and five which Hill has clarified are not asserted against Robeson County, the commissioners, or Kerns. See Pl.'s Mem. Opp'n 9.

Rule 12(f) permits a court, to strike "from a pleading [any] insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Whether to grant a motion to strike is within the discretion of the district court. See, e.g., Delta Consulting Group, Inc. v. R. Randle Constr., Inc., 554 F.3d 1133, 1141 (7th Cir. 2009). Motions to strike are "generally viewed with disfavor because striking a portion of a pleading is a drastic remedy." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (quotation omitted); see Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000) (per curiam). In light of plaintiff's response and the governing standard under Rule 12(f), the motion to strike is denied

IV.

On March 26, 2010, the Robeson County Sheriff's Office filed a motion to dismiss for failure to state a claim and for lack of personal jurisdiction [D.E. 98]. The Robeson County Sheriff's Office argues that the court should dismiss the claims against it because it is not an entity capable of being sued. Plaintiff responded in opposition [D.E. 108].

"State law dictates whether a [state] governmental agency has the capacity to be sued in federal court." Efird v. Riley, 342 F. Supp. 2d 413, 419–20 (M.D.N.C. 2004); see, e.g., Avery v. County of Burke, 660 F.2d 111, 113–14 (4th Cir. 1981). "For example, N.C. Gen. Stat. § 153A-11 acknowledges that a county is a legal entity which may be sued. However, there is no corresponding statute authorizing suit against a North Carolina county's sheriff's department." Parker v. Bladen County, 583 F. Supp. 2d 736, 740 (E.D.N.C. 2008). Accordingly, the Robeson County Sheriff's

19

Office lacks legal capacity to be sued. See id.; Efrid, 342 F. Supp. 2d at 419–20; Hargett v. Forsyth County Sheriff's Office, No. 1:03-CV-440, 2005 WL 4542859, at *2 (M.D.N.C. Sept. 29, 2005) (unpublished), aff'd, 172 Fed. Appx. 27 (4th Cir. 2006) (per curiam) (unpublished). Thus, the court grants Robeson County Sheriff's Office's motion to dismiss for failure to state a claim upon which relief can be granted.

V.

As explained above, the court GRANTS the moving defendants' motion to dismiss for failure to state a claim [D.E. 53], DENIES the moving defendants' motion to strike [D.E. 53], and GRANTS the Robeson County Sheriff's Office's motion to dismiss for failure to state a claim [D.E. 98]. Thus, the court dismisses counts three, four, and six against the moving defendants and dismisses count one against the Robeson County Sheriff's Office.

SO ORDERED. This 20 day of May 2010.

JAMES C. DEVER III
United States District Judge